J-S11010-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
   :           PENNSYLVANIA
   :
v.   :
   :
   :
WILLARD NIMROD FYOCK   :
   :
Appellant   :   No. 1052 WDA 2024

Appeal from the PCRA Order Entered August 2, 2024
In the Court of Common Pleas of Clearfield County Criminal Division at
No(s): CP-17-CR-0001190-2021

BEFORE: MURRAY, J., KING, J., and LANE, J.

MEMORANDUM BY MURRAY, J.:        **FILED: April 17, 2025**

Willard Nimrod Fyock (Appellant) appeals from the order dismissing his first petition filed under the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546. We affirm.

On October 21, 2021, Appellant fired three shots at his wife; one shot struck her leg. **See** Criminal Complaint, 10/21/21, Affidavit of Probable Cause at 1. The Commonwealth subsequently charged Appellant with one count of criminal attempt—criminal homicide,[1] and three counts each of aggravated assault—extreme indifference, aggravated assault—deadly weapon, simple assault—deadly weapon, and recklessly endangering another person.[2]

---

[1] 18 Pa.C.S.A. §§ 901(a) (criminal attempt), 2501(a) (criminal homicide).

[2] 18 Pa.C.S.A. §§ 2702(a)(1), 2702(a)(4), 2701(a)(2), 2705.

On September 15, 2022, Appellant and his counsel (plea counsel) signed a written Negotiated Plea Agreement and Guilty Plea Colloquy. Pertinent to the instant appeal, the written agreement indicated "[Appellant] to plead guilty to the following charge(s)," and listed the following charge:

Charge Description: Criminal Attempt—Criminal Homicide

Statute: 18 PA 2501(a)

Negotiated Plea Agreement and Guilty Plea Colloquy, 9/15/22, at 1. The written agreement thus incorrectly listed the statutory section for criminal homicide only, and did not include the section for criminal attempt. *Id.* The agreement provided that Appellant would receive a minimum prison sentence between 60 and 84 months, with the maximum sentence at the trial court's discretion. *Id.* at 2.

Also on September 15, 2022, Appellant appeared before the trial court and pled guilty to one count of criminal attempt—criminal homicide. *See* N.T., 9/15/22, at 3-11. At outset of the plea hearing, the Commonwealth advised the trial court that Appellant "has executed a negotiated plea agreement and guilty plea colloquy to the following: Criminal attempt/criminal homicide, one count. [Appellant] to receive a minimum period of between 60 and 84 months' incarceration…." *Id.* at 3. Plea counsel stated, "Your Honor, I concur that that is, in fact, what was discussed and that formed the basis of the negotiated plea agreement between myself, [Appellant], and the Commonwealth." *Id.*

Appellant testified that he read and understood the terms of the written plea agreement and the guilty plea colloquy. *Id.* at 4-5. Appellant confirmed that he understood the nature and the elements of the charge to which he was pleading guilty. *Id.* at 5-6. He confirmed that he understood the factual basis for the charge. *Id.* Appellant also confirmed that he had sufficient opportunity to discuss the plea agreement with plea counsel, and that plea counsel had explained the agreement to him. *Id.* at 8. Additionally, plea counsel confirmed that he reviewed the factual basis for the plea with Appellant. *Id.* at 8-9. Plea counsel further confirmed that he explained to Appellant the elements of the charge and the permissible range of sentences. *Id.* at 9. At the conclusion of the plea hearing, the trial court accepted the plea, ordered a pre-sentence investigation, and scheduled sentencing. *Id.* at 10.

On November 28, 2022, in accordance with the plea agreement, the trial court imposed a sentence of 84 to 240 months in prison.[3] The sentencing order stated that Appellant had "entered a Plea of Guilt to Criminal Attempt to Commit Criminal Homicide…." Sentencing Order, 11/28/22, at 1 (unpaginated). The order also noted that all other charges were withdrawn. *Id.* at 2 (unpaginated). No post-sentence motion or direct appeal followed.

---

[3] The transcript of Appellant's sentencing hearing is not included in the certified record before this Court.

After Appellant's sentencing, both the docket and Appellant's DC-300B commitment form[4] incorrectly stated that Appellant had pled guilty to and been sentenced for criminal homicide, not attempted homicide. **See** N.T., 3/1/24, Exhibit E (Appellant's docket sheet, printed 5/24/23); Exhibit D (DC-300B commitment form, dated 12/7/22).

On June 5, 2023, Appellant filed a timely, *pro se* PCRA petition. The PCRA court appointed Appellant counsel, who subsequently filed an amended petition. The amended petition alleged that plea counsel had rendered ineffective assistance by, *inter alia*, "fail[ing] to properly explain the Negotiated Plea Agreement and Guilty Plea Colloquy[,] and having [Appellant] sign [the agreement despite its] incorrect statutory references to charges that do not have a factual basis to support said charge[.]" Amended PCRA Petition, 1/5/24, ¶ 7. The amended petition further alleged that Appellant "is currently being held by [DOC] on a charge [(criminal homicide)] that was never filed

---

[4] Form DC-300B

> is a commitment document generated by the Common Pleas Criminal Court Case Management System [(CPCMS)]. **See** 37 Pa. Code § 96.4; 42 Pa.C.S.A. § 9764. Section 9764 of the Judicial Code sets forth the procedure associated with transfer of an inmate into [Department of Corrections (DOC)] custody and provides that, on commitment of an inmate, the transporting official must provide the DOC with a copy of the trial court's sentencing order and a copy of the DC-300B commitment form. **See** 42 Pa.C.S.A. § 9764(a)(8).

*Commonwealth v. Heredia*, 97 A.3d 392, 394 n.3 (Pa. Super. 2014).

against him and was added without [his] knowledge or agreement…." ***Id.***, ¶ 9.

Between the initial filing of Appellant's PCRA petition and the evidentiary hearing, the Clearfield County Clerk of Courts adjusted certain data entries in the CPCMS system for Appellant's case, resulting in an updated docket and DC-300B commitment form which correctly reflected that Appellant had pled guilty to and been sentenced for criminal attempt—criminal homicide. ***See*** N.T., 3/1/24, at 49-57; ***see also id.***, Exhibit F (Appellant's docket sheet, printed 8/11/23, indicating plea/sentence for "Criminal Attempt—Criminal Homicide … 18 § 901 §§ A"); Exhibit 3 (DC-300B commitment form, dated 2/20/24, indicating plea/sentence for "Criminal Attempt—Criminal Homicide (Section 18 § 901 §§ A of the Crimes and Offenses Code)").

On March 1, 2024, the PCRA court held an evidentiary hearing, at which Appellant, plea counsel, and Deputy Clerk of Courts Gidget Spencer (Ms. Spencer) testified. Appellant testified that plea counsel advised him to plead guilty to "attempted murder, and I took his advice…." N.T., 3/1/24, at 8. He stated plea counsel "told me the charge I was pleading to was attempted murder. As I looked across the [written plea agreement], I noticed the statute [listed] being [section] 2501. I thought that was associated with attempted murder." ***Id.*** at 11. Appellant testified he would not have signed the plea agreement "had I known [section] 2501 was homicide." ***Id.*** at 18. He stated

his belief that plea counsel was ineffective for "not telling me what [section] 2501 was...." *Id.* at 20.

Appellant testified that after he was transferred to state prison, he "first learned [he] was in jail for homicide." *Id.* at 12. He learned that his docket sheet and DC-300B commitment form indicated he had pled guilty to and been sentenced for criminal homicide. *Id.* at 12-15; *see also id.*, Exhibits D and E. However, Appellant admitted that updated versions of his docket sheet and DC-300B commitment form indicated he had pled guilty to and been sentenced for criminal attempt—criminal homicide. N.T., 3/1/24, at 16-17, 30-31; *see also id.*, Exhibits F and 3.

Upon questioning by the PCRA court,[5] Appellant confirmed his understanding that on November 28, 2022, he was in fact sentenced for criminal attempt—criminal homicide, not criminal homicide. N.T., 3/1/24, at 36-37. He further confirmed that his written plea agreement described the charge as criminal attempt—criminal homicide. *Id.* at 37. Appellant nevertheless insisted that because the written plea agreement did not list "section 901," he believed he was in fact incarcerated for criminal homicide. *Id.*

Plea counsel testified that the plea agreement "came to life over many months and many discussions with [Appellant], which included review of

---

[5] The same judge presided over Appellant's plea/sentencing and the instant PCRA proceedings.

sentencing guidelines, maximum and minimum [sentences, and] included jury instructions, as to a potential trial…." *Id.* at 45. Plea counsel testified he and Appellant discussed "maximums, minimums, all of it, in detail, many times." *Id.* at 45. Plea counsel did not recall noticing that the written plea agreement listed only section 2501 and did not include section 901, but testified that he had no concerns regarding the agreement. *Id.* at 40. Plea counsel confirmed that "regardless whether there was [section] 901 on the [written] plea agreement or not," the agreement "was that [Appellant] was pleading guilty to criminal attempt to commit criminal homicide[.]" *Id.* at 47-48.

Ms. Spencer testified that in all criminal cases, Clerk of Courts staff enters information from the sentencing orders into the CPCMS system. *Id.* at 49-50. In the case of inchoate offenses, the "system does not accept [section] 901." *Id.* at 50. Rather, the staff enters the statutory section for the underlying offense, "check[s] … a separate box" to indicate an inchoate offense, and then checks another box to indicate criminal attempt. *Id.* at 51, 55-56. Ms. Spencer testified that this information is then reflected on the docket and is used by the probation department to prepare the DC-300B commitment form. *Id.* at 53-54.

Ms. Spencer testified that in Appellant's case, when Clerk of Courts staff entered the information from Appellant's sentencing order, the staff did not check the boxes indicating inchoate offense or criminal attempt. *Id.* 49-50, 55-56. Ms. Spencer testified that when this error "was brought to our

attention, we went [into CPCMS] and adjusted that to criminal attempt/criminal homicide." ***Id.*** at 50. Thereafter, the adjustment was reflected on the docket, and the probation department prepared an updated DC-300B commitment form. ***Id.*** at 56-57; ***see also id.***, Exhibits F and 3.

On August 2, 2024, the PCRA court entered an opinion and order dismissing Appellant's petition. Appellant timely appealed. Appellant and the PCRA court have complied with Pa.R.A.P. 1925.[6]

Appellant identifies two issues for our review:

1. Whether the [PCRA] court erred by finding that Appellant's plea was knowingly, intelligently, and voluntarily entered … when the plea agreement contained missing information, inaccurate statutory references, was not appropriately explained by [plea] counsel, and no factual basis existed to support the charge listed on the plea agreement?

2. Whether Appellant's rights under the Constitution were violated based upon the cumulative impact of the above errors?

Appellant's Brief at 5 (capitalization modified).

In his first issue, Appellant argues the PCRA court erred in determining that his guilty plea was knowingly, intelligently, and voluntarily entered. ***Id.*** at 9-15. He maintains there was no factual basis to support a plea for criminal homicide, as the victim was alive. ***Id.*** at 11-12. "As Appellant was never charged with homicide," he argues, "he would have no reason to even consider

_____

[6] The PCRA court filed a statement in lieu of opinion, noting its intent to rely on its August 2, 2024, opinion. The Commonwealth did not file an appellate brief, but filed correspondence expressing its agreement with the PCRA court's August 2, 2024, opinion.

he was signing a [written] plea [agreement] for homicide[,] making it impossible for him to have the requisite understanding of his plea." *Id.* at 12. Appellant asserts that the

> omissions and errors on the written negotiated plea [agreement], coupled with no mention of the [f]actual basis for the charges, clearly misled Appellant [in]to pleading to a charge that he did not know he was pleading to. Thus, his plea was not knowingly and intelligently entered and should not stand.

*Id.* at 15.

> We observe the following standard of review:

> Our review of a PCRA court's decision is limited to examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error. We view the findings of the PCRA court and the evidence of record in a light most favorable to the prevailing party. … The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions.

*Commonwealth v. Sandusky*, 324 A.3d 551, 564 (Pa. Super. 2024) (citation omitted).

> A PCRA petitioner claiming ineffective assistance of counsel

> will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place."

*Commonwealth v. Spotz*, 84 A.3d 294, 311 (Pa. 2014) (quoting 42 Pa.C.S.A. § 9543(a)(2)(ii)). To establish a claim of ineffectiveness, a PCRA petitioner must plead and prove:

(1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) he suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability the result of the proceeding would have been different. ***Commonwealth v. Chmiel***, 30 A.3d 1111, 1127 (Pa. 2011) (employing the ineffective assistance of counsel test from ***Commonwealth v. Pierce***, 527 A.2d 973, 975-76 (Pa. 1987)). … Finally, because a PCRA petitioner must establish all the ***Pierce*** prongs to be entitled to relief, we are not required to analyze the elements of an ineffectiveness claim in any specific order; thus, if a claim fails under any required element, we may dismiss the claim on that basis.

***Commonwealth v. Treiber***, 121 A.3d 435, 445 (Pa. 2015) (citations modified).

A criminal defendant has the right to effective counsel during a plea process as well as during trial. A defendant is permitted to withdraw his guilty plea under the PCRA if ineffective assistance of counsel caused the defendant to enter an involuntary plea of guilty…. The voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases.

***Commonwealth v. Orlando***, 156 A.3d 1274, 1280 (Pa. Super. 2017) (citations and quotation marks omitted).

Instantly, the PCRA court determined Appellant's ineffectiveness claim lacked arguable merit because Appellant pled guilty to and was sentenced for criminal attempt—criminal homicide, not criminal homicide. PCRA Court Opinion, 8/2/24, at 4. The PCRA court observed that Appellant's claim was based on his "belief that he was incarcerated for criminal homicide," and this belief was based on "a clerical error on the Negotiated Plea Agreement,

specifically, [the agreement] not including … section 901…." ***Id.*** at 3. The PCRA court stated Appellant

> claims that he did not knowingly and intelligently enter into the plea [agreement] because [plea counsel] never explained 18 Pa.C.S.A. § 2501(a) to him[,] and that he would not have signed the plea [agreement] if he had known that [section] 2501(a) was homicide. [N.T., 3/1/24, at 10.] While the [PCRA c]ourt appreciates the confusion this error has caused [Appellant], it does not change the fact that [Appellant] was sentenced to a period of incarceration for criminal attempt—criminal homicide, the same charge to which he agreed to plead guilty.

PCRA Court Opinion, 8/2/24, at 3.

The PCRA court further determined the charge was identified as criminal attempt—criminal homicide in the written plea agreement, at the plea hearing, and in the sentencing order. ***Id.*** at 3-4. The PCRA court found that plea counsel "credibly testified that he thoroughly explained the plea agreement to [Appellant]." ***Id.*** at 5. The PCRA court found plea counsel "adequately communicated the plea agreement to [Appellant,] such that [Appellant] was able to knowingly, intelligently, and voluntarily enter into the plea agreement." ***Id.*** The PCRA court also found that "[t]here was a breakdown in communication when personnel in the Clerk of Courts was entering information from [Appellant's] sentencing order [into CPCMS]." ***Id.*** at 4. The PCRA court found that the Clerk of Courts later corrected the error, and that the error had no effect on Appellant's actual plea and sentence. ***Id.***

Our review discloses the PCRA court's factual findings are supported by the record, and its legal conclusions are sound. Appellant's claims focus on

clerical errors in his written plea agreement, his docket, and his DC-300B commitment form. We agree with the PCRA court, however, that these errors ultimately had no effect on Appellant's plea or sentence. Clerical errors notwithstanding, the record is abundantly clear that Appellant in fact pled guilty to and was sentenced for criminal attempt—criminal homicide, not criminal homicide. Viewing the PCRA court's findings in the light most favorable to the Commonwealth, we discern no error in the PCRA court's determination that plea counsel competently advised Appellant regarding his plea, and that Appellant entered the plea voluntarily. Accordingly, Appellant's ineffectiveness claim fails, and his first issue merits no relief. *See Treiber*, 121 A.3d at 445 (stating that if an ineffectiveness claim fails under any required element, we may dismiss the claim on that basis).

In his second issue, Appellant asserts his constitutional rights were violated by cumulative errors. Appellant's Brief at 16. The entirety of Appellant's argument on this issue is as follows:

> [The Pennsylvania Supreme] Court has held that "no number of failed claims may collectively warrant relief if they fail to do so individually." *Commonwealth v. Washington*, 927 A.2d 586, 617 (Pa. 2007). However, if counsel is found to be ineffective in more than one instance, the question of whether prejudice resulted may be tallied cumulatively. *Commonwealth v. Johnson*, 966 A.2d 523, 532 (Pa. 2009). In the instant matter, Appellant contends that the above issues demonstrate that there were in fact multiple instances of errors surrounding his plea agreement and the same should be considered.

Appellant's Brief at 16.

As Appellant has not adequately developed this issue, we deem it waived. ***See Commonwealth v. Freeman***, 128 A.3d 1231, 1249 (Pa. Super. 2015) ("The failure to develop an adequate argument in an appellate brief may result in waiver of the claim under Pa.R.A.P. 2119."). Even if not waived, the issue would merit no relief, as plea counsel was not found to be ineffective in any instance. ***See Johnson***, 966 A.2d at 532 (recognizing "that if multiple instances of deficient performance [by counsel] are found, the assessment of prejudice properly may be premised upon cumulation.").

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

4/17/2025